Sherman, P J.
This is an action to recover a $7,500.00 deposit paid by the plaintiffs as prospective purchasers of real estate sold at aforeclosure auction by the defendant-mortgagee. The plaintiffs claim for a return of their deposit is predicated solely on the allegation that the defendant became unable to perform his contractual obligation to convey good and clear title because of the recording of a lis pendens on the property.
The defendant answered that the plaintiffs forfeited their purchase deposit by refusing to accept his tender of a “foreclosure deed under power without warranty” which was the only title called for by the parties’ purchase agreement The defendant also counterclaimed for costs and expenses incurred in connection with his subse *121 quent auction and resale of the property at a reduced price to a third party.
The defendant filed a Dist/Mun. Cts. R. Civ. P., Rule 56 motion for summary judgment supported by the affidavit of his counsel. The relevant facts setforth therein, and in the plaintiffs’ counteraffidavit, are undisputed.
The defendant, Men B. Schwartz (“Schwartz”), was the holder of a mortgage given by Robert C. Luisi on the premises at 87 North Central Street, Peabody, Massachusetts. By virtue of a power of sale contained in such mortgage, the defendant auctioned the property onjanuary 3,1991. The plaintiffs were the high bidders atsuch foreclosure auction, and executed a purchase agreement consisting of a Memorandum of Sale, an instrument captioned “Additional Terms and Conditions” and a legal notice of sale. The purchase agreement provided, inter alia, for the payment of a nonrefundable deposit of $7,500.00; the forfeiture of such deposit upon the buyer’s breach; the payment of the purchase price balance within sixty (60) days of the date of the auction; and the conveyance of the property no later than ten (10) days from the date of final judicial approval of the sale. The agreement also stated:
The title to the premises shall be that which was conveyed by mortgage deed to the mortgagee and the purchaser shall take title to the premises by the usual and customary foreclosure deed under power without warranty.
A closing date of February 27,1991 was thereafter agreed to by both parties. Final approval of the sale was ordered by the Superior Court on February 22,1991.
On the afternoon of February 26, 1991, the day before the scheduled closing, plaintiff David Arico was served with a summons naming him as one of six defendants in a Superior Court action brought by Louis and Adrienne Luisi (“Luisis”), the occupants of the real estate in question. Atemporary restraining orderwas issued by a Superior Court judge which prohibited both the transfer of title to the property and an eviction of the Luisis. The judge also authorized the filing of a lis pendens pursuant to G.L.c. 184, §15.[2]
*122 Both the temporary restraining order and lis pendens were, after hearing, dissolved by the Superior Court two days later on February 28, 1991.[3] Defendant Schwartz immediately advised the plaintiffs of the dissolution order and of his readiness to convey title to the property. Claiming that there was a cloud on the title because the dissolution of the lis pendens was not yet recorded and because the Superior Court action was still pending, the plaintiffs refused to proceed with the transaction, and demanded that Schwartz refund their deposit.
On March 4, 1991, the tenth day following judicial approval of the foreclosure sale, defendant’s counsel appeared at the Essex County Registry of Deeds ready and able to convey title by foreclosure deed. The plaintiffs did not appear. The sixty day period following the foreclosure sale passed without payment of the purchase price balance by the plaintiffs. The Superior Court action remained pending until November 6, 1991, on which date judgment was entered for defendant Schwartz only.
Based on this uncontroverted evidence, the trial court allowed the defendant’s Rule 56 motion, ruling that the plaintiffs’ refusal to accept the foreclosure deed specified in their purchase agreement within ten days of judicial approval of the sale constituted a breach of such agreement. Summary judgment was entered for the defendant on both the complaint and counterclaim, and damages were assessed on the counterclaim in the amount of $12,831.00.[4]
1. In opposition to the defendant’s summary judgment motion, the plaintiffs submitted the affidavit of a real estate conveyancing specialist who opined that both the pendency of the Superior Court action (to the extent it involved claims of ownership of the realty), and the existence of an outstanding lis pendens (the dissolution of which was not yet recorded) constituted a cloud on the title of the real estate in question. Based on such expert opinion, the plaintiffs contend that the defendant was unable to convey good and clear title to the property in performance of his implicit contractual obligations, and that they are thus entitled to a return of their deposit.
The plaintiffs’ contention is unsound as a matter of law because it misstates both the nature of the title to be conveyed by the defendant and the unqualified obligation of the plaintiffs to accept such title as expressed in the purchase agreement. It is undeniable that a lis pendens constitutes a cloud on the record title to realty. The recording of alis pendens essentially serves as notice to all interested persons that title to the real estate is in litigation, and that any purchaser of the real estate assumes the risk of being bound by a potentially adverse judgment.
Lis Pendens means ‘pending suit.’ Under the common law doctrine of lis pendens, the mere existence of litigation involving title to real property was deemed constructive notice to the world, so that anyone who purchased the disputed property while the suit was pending was bound by the judgment *123 ultimately rendered.
Doral Realty Inc. v. DiChiara, 383 Mass. 559, 560 (1981).
A memorandum of lis pendens, like an attachment of real estate, temporarily restricts the power of a land owner to sell his or her property by depriving the owner of the ability to convey clear title while the litigation is pending.
Id. at 564. Events subsequent to the recording of the lis pendens in the instant case indicate, however, that the temporary cloud on the title did not signify the existence of any real question about the title to the realty. The lis pendens was dissolved on February 28, 1991, and the order of dissolution was available for recording prior to the expiration of the time period permitted for a closing in the plaintiffs’ purchase agreement. Further, both the Superior Court’s order of dissolution and the G.L.c. 184, §15 findings made in conjunction with said order[5] clearly state that the Luisi suit did not involve or constitute a claim of right to title to the real estate.
2. In any event, the short answer to the plaintiffs’ argument is that even if the lis pendens had not been dissolved, such encumbrance was in fact irrelevant to the performance of the mutual obligations of the parties herein. The plaintiffs never bargained for nor executed a standard purchase and sale agreement requiring the defendant’s conveyance of the property by a warranty or quitclaim deed granting good and clear record title. The real estate was auctioned at a foreclosure sale, and the plaintiffs signed a purchase agreement which not only expressly designated the title to be conveyed as “that which was conveyed by mortgage deed to the mortgagee,” see Goldman v. Damon, 272 Mass. 302 (1930), but also unequivocally obligated the plaintiffs to “take title to the mortgaged premises by the usual and customary foreclosure deed under power without warranty.” The customary foreclosure deed under power of sale in a mortgage is the statutory form of foreclosure deed set forth as Form 11, G.L.c. 183 App. Such deed recites only that the mortgagee “by the power conferred by said mortgage and every other power... grants to_the premises conveyed by such mortgage.” No warranties of any nature are provided in the statutory deed. More significantly, the foreclosure deed described in the purchase agreement by which the plaintiffs are bound is specified as adeed “withoutwarranfy.” Such express disclaimer of any warranties of any nature, including title, negates the plaintiffs’ argument that an inconsistent obligation is implicit in the agreement for the defendant to deliver good and clear title to the realty. The plaintiffs cannot avoid liabilityfor their breach of contract by contradicting the plain and unambiguous terms of such contract, or by rewriting their purchase agreement to now provide for a conveyance by warranty deed.
To recover on their complaint in this action, the plaintiffs were required to demonstrate that the defendant was unable to perform his agreement in accordance with its terms, and that such failure justified their refusal to proceed with the transaction. The documents presented to the trial court upon the defendanf s Rule 56 motion establish that the plaintiffs would be unable at trial to sustain their burden of proving that the defendant was unable to deliver the foreclosure deed described in the parties’ purchase agreement. Kourouvacilis v. General Motors Corp., 410 Mass. 706, *124 708 (1991). Summary judgment was thus properly granted to the defendant.
There being no error, the report is dismissed.

 Paragraph two of G.L.c. 184, §15 provides: “Upon motion of any party, a justice of the court before which the action is pending shall, if the subject matter of the action constitutes a claim of a right to title to real property or the use and occupation thereof or the building thereon, make a finding to that effect and endorse said finding upon said memorandum. No register of deeds nor assistant recorder of any district of the land court shall accept such memorandum for recording unless it contains such endorsement and is accompanied by an affidavit to the effect that the moving party has served notice of the allowance of such motion by certified mail addressed to all other parties prior to the recording of the memorandum. In the event the finding is made pursuant to an ex parte proceeding, any party aggrieved thereby may by motion move the dissolution of the memorandum and the court shall hear said motion forthwith. At such hearing, the party whose motion was allowed ex parte shall have the burden of justifying any findings in the ex parte order which is challenged by the party aggrieved thereby. Any party aggrieved by any ruling under this section may appeal pursuantto the provisions of section one hundred and eighteen of chapter two hundred and thirty-one. Nothing herein shall deprive an owner of registered land from proceeding under the provisions of section one hundred and fourteen of chapter one hundred and eighty-five to challenge the validity of the registration of a memorandum of lis pendens.”

The Superior Court’s Order of Dissolution stated: “N otice is hereby given that in Civil Action No. 91-1220A commenced in the Suffolk Superior Court, entitled Louis C. Luisi and Adrienne M. Luisi v. Robert C. Luisi, Et Al., the lis pendens authorized by the court on February 25, 1991, is hereby dissolved.
“The Court haring found that the subject matter of the action does not constitute a claim of right to title to the real property, together with the building thereon, known and numbered as 87 North Central Street, Peabody County, Massachusetts, has ordered the dissolution of said lis pendens as of February 28,1991.
“Pursuant to General Laws Chapter 185, Section 86,1 hereby find that the within action does not constitute a claim of a right to title to real property or to the use and occupation thereof or the buildings thereon, and therefore order the lis pendens previously allowed by me, to be dissolved.”

 No issue as to the damages assessed on the defendant’s counterclaim has been raised or argued by the plaintiffs on this appeal.

 Such findings are the sine qua non of a valid lis pendens. Prior to 1985, any person could file a lis pendens without notice to any party and without the approval of any court The Legislature amended G.L.c. 184, §15 in 1985 to provide that both a finding by a court that a pending action constitutes a claim of right to title to real property or to the use and occupation thereof, and the court’s endorsement of such findings upon the memorandum of lis pendens were a prerequisite to the recording of the lis pendens. See note 2, supra.